UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASSANDRA COOPER-NEAL,

    Plaintiff,

v.                                      Case No. 8:22-cv-2420-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 261-67, 268-74). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 90-92, 93-95, 127-33, 134-43). Plaintiff

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

then requested an administrative hearing (Tr. 181). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-66). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-36). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning October 8, 2019 (Tr. 261-62, 268-69). Plaintiff obtained a college education (Tr. 298). Plaintiff's past relevant work experience included work as a phlebotomist and vocational training instructor (Tr. 42-43, 298, 345). Plaintiff alleged disability due to diabetes, anxiety, neuropathy of the hands and feet, high blood pressure, hypertension, migraine headaches, and issues with vision, sleep, concentration, upper body strength and falling (Tr. 296).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019 and had not engaged in substantial gainful activity since October 8, 2019, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: diabetes with peripheral neuropathy, migraine headaches, major depressive disorder, and generalized anxiety disorder (Tr. 18). Notwithstanding the noted impairments, the ALJ

2

determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> work at the light exertional level that does not require climbing ladders, ropes or scaffolds; nor more than frequent climb ramps/stairs, crawling, crouching, balancing, kneeling and stooping; is limited to work that does not require more than frequent fingering bilaterally - that is, fine manipulation of items no smaller than the size of a paper clip and no more frequent handling of objects bilaterally – that is, gross manipulation; nor more than a concentrated exposure to irritants such as vibrations and hazards; and further limited to work that is defined as simple as defined in the DOT as SVP levels 1 and 2, Routine and Repetitive tasks in a work environment free of fast paced production requirements which is defined as constant activity with work tasks; performed sequentially in rapid succession; involving only simple-work related decisions; and no more than occasional interaction with the general public, co-workers, and supervisors.

(Tr. 19-20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22-23).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 24-25). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a label coder, small products assembler, and electronics worker

(Tr. 25-26). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled prior to October 6, 2021 (Tr. 26).[2]

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant

---

[2] The ALJ found that, due to her age category, education, work experience and residual functional capacity, there were no jobs that Plaintiff could perform beginning October 6, 2021, and that Plaintiff became disabled on that date, and continued to be disabled through the date of the decision (Tr. 26).

is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

  The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the

individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by finding her migraine headaches severe but failing to properly accommodate her headaches in the RFC. For the following reasons, the ALJ applied to apply the correct legal standards, and the ALJ's decision is supported by substantial evidence.

Prior to Steps Four and Five of the sequential evaluation process, an ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC assessment represents "the most" a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC must take into account all of the medical evidence in the record, and must reflect all of the claimant's physical, mental, and environmental restrictions. 20 C.F.R. § 404.1545(a)(1) and (3). Additionally, the Eleventh Circuit has held that an RFC assessment must describe the combined effects of all of a claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

As part of this consideration, the ALJ also considers the claimant's subjective complaints. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably

be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3–9. If the Commissioner determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3–9. Notably, in considering a claimant's subjective complaints, the ALJ considers both inconsistencies in the evidence and the extent to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or nontreating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4). When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*,

8

771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

The issue is not whether some evidence might support Plaintiff's allegations, but rather, whether substantial evidence supports the ALJ's findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); see also *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not... whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it"). Under a substantial evidence standard of review, Plaintiff cannot merely identify evidence in the record supporting her position, but rather, must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Here, at Step Two, the ALJ found the Plaintiff's migraines were a severe impairment (Tr. 18). In formulating Plaintiff's RFC at Step Four, the ALJ considered Plaintiff's subjective complaints and determined that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, the intensity and persistence of Plaintiff's symptoms were inconsistent with medical evidence in the record (Tr. 22-23). The ALJ discounted Plaintiff's subjective complaints because they were "inconsistent with clinical observations, diagnostic testing, the claimant's treatment history, and the claimant's activities of daily living." (Tr. 23).

As part of the ALJ's analysis, the ALJ acknowledged Plaintiff's testimony that she had headaches two to three times a week which lasted up to 90 minutes each (Tr. 20, 53). In addressing her subjective complaints of migraine headaches, the ALJ recognized that Plaintiff did not seek or receive repeated emergency or inpatient care for intractable migraine headaches during the relevant period (Tr. 23). Rather, on a single occasion on July 11, 2021, Plaintiff sought emergency care for a throbbing headache (Tr. 1074). At that time, she reported that she had migraines in childhood but admitted that she had not had one recently (*Id.*). She was diagnosed with a migraine headache and prescribed Fioricet (Tr. 1078).

Admittedly, Plaintiff sought emergency care on four other occasions, but on none of the occasions did she complain of an intractable migraine headache. In October 2020, Plaintiff sought emergency treatment for slurred speech, stuttering, trouble finding words, and chest pain (Tr. 583, 599, 720, 736). In March 2021, Plaintiff was treated for hyperglycemia (Tr. 863, 865, 872). At that time, she reported a mild headache (Tr. 865). Plaintiff sought emergency care on July 7, 2021 at which time her chief complaints were hypertension and dizziness with weakness and fatigue (Tr. 899, 908-11, 923, 948, 891, 1032). She also complained of headaches, nausea, disequilibrium, abdominal discomfort, and extremity weakness (Tr. 923, 928, 932, 936). She was diagnosed with dehydration, diabetes, fatigue, hypertension, increased blood sugar and neuropathy (Tr. 948). There is no indication that she was taking or prescribed any pain medication for her migraines at that time (*see* Tr. 950-53, 1052-56). While Plaintiff complained of a headache

10

along with shortness of breath, fever, a cough and bilateral flank pain when she sought emergency treatment in September 2021, she was diagnosed with Covid pneumonia (Tr. 800, 810, 816).

The ALJ also reasoned that diagnostic imaging of her head and brain were unremarkable and did not support Plaintiff's claims of recurrent weekly headaches (Tr. 23). Plaintiff's October 16, 2020 CT scan of her head showed no acute abnormalities (Tr. 605-07). The MRI and MRA results of Plaintiff's brain from that same date were essentially normal with no acute intracranial abnormalities, and no critical stenosis or aneurysm (Tr. 602). The July 2021 CT of Plaintiff's head showed no acute abnormalities (Tr. 937, 978). An MRI of Plaintiff's brain from July 2021 similarly showed no acute intracranial abnormalities (Tr. 980, 1077).

The ALJ highlighted that Plaintiff told the consulting examiner in 2021 that she had headaches for a few weeks during 2021 but that they had resolved and had not returned (Tr. 23). Dr. Whale, a consulting physician, examined Plaintiff on August 7, 2021 (Tr. 772-78). At that time, Plaintiff reported that her "[m]igraines started when she got her COVID shot a few months ago. Had 3 weeks of headaches and then went to the hospital for her BP and her migraines resolved. No headaches since." (Tr. 772). Dr. Whale opined that Plaintiff's headaches were due to her poorly controlled hypertension (Tr. 777).

Finally, despite her allegations of two to three headaches a week, Plaintiff remained able to handle her daily activities during the relevant period which included watching television, playing with her grandchildren personal care, meal

11

preparation, household chores, shopping, and driving (Tr. 24, 44, 55-56, 311-12, 353-55).

While it is undisputed that Plaintiff suffers from occasional migraines, the record does not include any complaints from Plaintiff about the need to avoid noise or bright lights. Nonetheless, Plaintiff's RFC include limitations that accommodate migraines. Notably, as the Commissioner recognizes, the RFC includes that Plaintiff have "no more than a concentrated exposure to irritants such as vibrations and hazards" (Tr. 20). These environmental factors could be potential migraine triggers. *See Coheley v. Soc. Sec. Admin.*, 707 F. App'x 656, 659-60 (11th Cir. 2017) (upholding the ALJ's RFC finding and noting that the RFC accounted for claimant's migraines by including environmental limitations). The RFC limitations, including restricting Plaintiff to simple light work, ultimately result in Plaintiff performing work that is less stressful and less taxing than work with higher exertional requirements, thus successfully accommodating Plaintiff's migraine headaches. *See Graham v. Comm'r of Soc. Sec.*, 622 F. App'x 841 (11th Cir. 2015) (rejecting claimant's argument that the ALJ erred by determining she had the RFC to perform light work despite also concluding her migraine and tension headaches were severe impairments). For these reasons, substantial evidence supports the ALJ's RFC assessment and consideration of Plaintiff's migraine headaches.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of December 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record